# United States District Court

FOR THE
**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

---

UNITED STATES OF AMERICA,

V.

EDVIN OVASAPYAN and
HAKOB KOJOYAN,

FILED

NOV - 1 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**CR 18  533  RS**

DEFENDANT(S).

---

## INDICTMENT

VIOLATIONS: 18 U.S.C. § 1343 – Wire Fraud; 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1956(h) – Conspiracy to Commit Laundering of Monetary Instruments; 18 U.S.C. § 371 – Conspiracy to Engage in the Unlawful Wholesale Distribution of Drugs; 18 U.S.C. § 2 – Aiding and Abetting; 18 U.S.C. §§ 981, 982 & 28 U.S.C. § 2461(c) – Criminal Forfeiture

---

A true bill.

_____ Foreman

Filed in open court this __1st__ day of
__Nov, 2018__.

_____
Clerk

THOMAS S. HIXSON
UNITED STATES MAGISTRATE JUDGE

Bail, $ _____

NO BAIL WARRANT
As to both Defendants

16cf

AO 257 (Rev. 6/78)

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT  ☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

## OFFENSE CHARGED

Ct 1: 18 U.S.C. 1349 - Conspiracy to Commit Wire Fraud
Cts 2 and 3: 18 U.S.C. 1343 - Wire Fraud
Ct 4: 18 U.S.C. 1956(h) - Money Laundering Conspiracy
Ct 5: 18 U.S.C. 371 - Conspiracy to Engage in the Unlawful Wholesale Distribution of Drugs

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: See Attachment

### DEFENDANT - U.S

▶ Hakob KOJOYAN

DISTRICT COURT NUMBER

**CR 18 533 RS**

FILED
NOV -1 2018
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

### DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☒ Is on Bail or Release from (show District)
   Northern District of California

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction   } ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
   If answer to (6) is "Yes", show name of institution _____

Has detainer been filed?  ☐ Yes  ☐ No  } If "Yes" give date filed _____

DATE OF ARREST ▶ Month/Day/Year _____
Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year _____

☐ This report amends AO 257 previously submitted

## PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)
Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court _____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District _____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. ATTORNEY  ☐ DEFENSE
} SHOW DOCKET NO. _____

☐ this prosecution relates to a pending case involving this same defendant

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
} MAGISTRATE CASE NO. 3:18-70612 MAG

Name and Office of Person Furnishing Information on this form   ALEX G. TSE
☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Andrew F. Dawson

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT   Bail Amount: _____

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:
_____

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____   Before Judge: _____

Comments:

**Attachment A to AO 91**

**UNITED STATES v. HAKOB KOJOYAN**

---

Count 1: 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud
Counts 2 and 3: 18 U.S.C. § 1343 – Wire Fraud

---

Maximum Penalties per count:
    20 years in prison
    $250,000 fine, or twice the gross gain or loss
    3 years' supervised release
    $100 special assessment
    Forfeiture
    Potential deportation

---

Count 4: 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering

---

Maximum Penalties:
    20 years in prison
    $500,000 fine or twice the value of the property involved in the transaction
    3 years' supervised release
    $100 special assessment
    Forfeiture
    Potential deportation

---

Count 5: 18 U.S.C. § 371 – Conspiracy to Engage in the Unlawful Wholesale Distribution of Drugs

---

Maximum Penalties:
    5 years in prison
    $250,000 fine or twice the value of the property involved in the transaction
    3 years' supervised release
    $100 special assessment
    Forfeiture
    Potential Deportation

AO 257 (Rev. 6/78)

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT   ☐ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

## OFFENSE CHARGED

Ct 1: 18 U.S.C. 1349 - Conspiracy to Commit Wire Fraud
Cts 2 and 3: 18 U.S.C. 1343 - Wire Fraud
Ct 4: 18 U.S.C. 1956(h) - Money Laundering Conspiracy
Ct 5: 18 U.S.C. 371 - Conspiracy to Engage in the Unlawful Wholesale Distribution of Drugs

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: See Attachment

## DEFENDANT - U.S

▶ Edvin OVASAPYAN

**DISTRICT COURT NUMBER**
CR 18 533 RS

FILED
NOV -1 2018
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SEALED BY ORDER

## DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District) _____

**IS IN CUSTODY**
4) ☐ On this charge
5) ☐ On another conviction   } ☐ Federal  ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution _____

Has detainer been filed?  ☐ Yes  ☐ No   } If "Yes" give date filed _____

**DATE OF ARREST** ▶ Month/Day/Year _____
Or... if Arresting Agency & Warrant were not
**DATE TRANSFERRED TO U.S. CUSTODY** ▶ Month/Day/Year _____

## PROCEEDING

**Name of Complainant Agency, or Person (& Title, if any)**
Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court _____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District _____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE
} SHOW DOCKET NO. _____

☐ this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO. _____

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under _____

**Name and Office of Person Furnishing Information on this form**   Andrew F. Dawson
☒ U.S. Attorney  ☐ Other U.S. Agency

**Name of Assistant U.S. Attorney (if assigned)**   Andrew F. Dawson

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

**PROCESS:**
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT   Bail Amount: _____

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address: _____

Date/Time: _____   Before Judge: _____

Comments:

**Attachment A to AO 91**

**UNITED STATES v. EDVIN OVASAPYAN**

> Count 1: 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud
> Counts 2 and 3: 18 U.S.C. § 1343 – Wire Fraud

Maximum Penalties per count:
    20 years in prison
    $250,000 fine, or twice the gross gain or loss
    3 years' supervised release
    $100 special assessment
    Forfeiture
    Potential deportation

> Count 4: 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering

Maximum Penalties:
    20 years in prison
    $500,000 fine or twice the value of the property involved in the transaction
    3 years' supervised release
    $100 special assessment
    Forfeiture
    Potential deportation

> Count 5: 18 U.S.C. § 371 – Conspiracy to Engage in the Unlawful Wholesale Distribution of Drugs

Maximum Penalties:
    5 years in prison
    $250,000 fine or twice the value of the property involved in the transaction
    3 years' supervised release
    $100 special assessment
    Forfeiture
    Potential Deportation

ALEX G. TSE (CABN 152348)
United States Attorney

FILED
NOV - 1 2018
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> EDVIN OVASAPYAN and HAKOB KOJOYAN, <br><br> Defendants. | CASE NO. CR 18 533 RS <br><br> VIOLATIONS: 18 U.S.C. § 1343 –Wire Fraud; 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1956(h) – Conspiracy to Commit Laundering of Monetary Instruments; 18 U.S.C. § 371 – Conspiracy to Engage in the Unlawful Wholesale Distribution of Drugs; 18 U.S.C. § 2 – Aiding and Abetting; 18 U.S.C. §§ 981, 982 & 28 U.S.C. § 2461(c) – Criminal Forfeiture <br><br> SAN FRANCISCO VENUE |

INDICTMENT

The Grand Jury charges:

Introductory Allegations

At all times relevant to this Indictment:

Overview of the Regulation of the Distribution of Prescription Drugs

1.  The Food and Drug Administration ("FDA") is the federal agency of the United States responsible for administering federal statutes and regulations aimed at protecting the health and safety of United States citizens and residents by ensuring that, among other things, drugs are safe and effective for their intended uses and that the labeling of such drugs bears true, complete, and accurate

1

informationefore they may be offered and sold in the United States.

2. One of the statutes that the FDA enforces is the Federal Food, Drug and Cosmetic Act (FDCA) as amended by the Drug Supply Chain and Security Act (DSCSA), which is designed to, among other things, ensure that drugs sold for human use are safe and effective for their intended uses.

3. The FDCA defines a "drug" as: (A) articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any articles specified in clause (A), (B), or (C).

4. A "prescription drug" is any drug which, because of its toxicity and other potential for harmful effects, or the method of its use, or the collateral measures necessary to its use, is not considered safe for use except under the supervision of a practitioner licensed by State law to administer such drugs, or any drug which is limited by an approved new drug application to use under the professional supervision of a practitioner licensed by law to administer such drug. 21 U.S.C. §353(b)(1).

5. On November 27, 2013, the DSCSA was enacted to better protect the integrity of the nation's drug distribution system. One of the intended results of the DSCSA is to prevent the practice known as prescription drug diversion. Under the DSCSA:

    a) "Wholesale Distribution" means distribution of a prescription drug to or receipt of a prescription drug by a person other than a consumer or patient, but does not include the lawful dispensing of a prescription drug pursuant to a prescription according to 21 U.S.C. §353(b)(1).

    b) A "wholesale distributor" of prescription drugs means a person (other than the manufacturer, a manufacturer's co-licensed partner, a third party logistics provider, or repackager) engaged in wholesale distribution.

    c) "Authorized" in the case of a wholesale distributor means having a valid license under State law or 21 U.S.C. § 360eee-2, in accordance with 21 U.S.C. §360eee-1(a)(6).

    d) "Licensed," in the case of a wholesale distributor, means having a valid license in

accordance under 21 U.S.C. §353(e) or State law.

  e) "Transaction history" means a statement in paper or electronic form that includes the transaction information for each prior transaction going back to the manufacturer of the drug product.

  f) "Transaction information" includes, among other things, the strength and dosage form of the drug product, the number of containers, the lot number of the drug product, and the business name and address of the persons from whom and to whom ownership is being transferred.

  g) " Transaction statement" means a statement in paper or electronic form that the entity transferring ownership of a drug product is in compliance with certain provisions of the DSCSA.

6. Effective January 1, 2015, the FDCA, as amended by the DSCSA, imposes requirements on wholesale distributors of most prescription drugs, including certain product tracing requirements. Specifically:

  a) A wholesale distributor shall not accept ownership of a product unless the previous owner prior to, or at the time of, the transaction provides the transaction history, transaction information, and a transaction statement for the product.

  b) The trading partners of a wholesale distributor may only be authorized trading partners.

7. If a wholesale distributor purchased a product directly from the manufacturer, the exclusive distributor of the manufacturer, or a repackager that purchased directly from the manufacturer, then prior to, or at the time of, each transaction in which the wholesale distributor transfers ownership of a product, the wholesale distributor shall provide to the subsequent purchaser—

  a) a transaction statement, which shall state that such wholesale distributor, or a member of the affiliate of such wholesale distributor, purchased the product directly from the manufacturer, exclusive distributor of the manufacturer, or repackager that purchased the product directly from the manufacturer; and

  b) the transaction history and transaction information.

8.  Wholesale distributors of prescription drugs who did not purchase a prescription drug directly from the manufacturer, the exclusive distributor of the manufacturer, or a repackager directly from the manufacturer must, prior to or at the time of each transaction, provide to the subsequent purchaser a transaction history, transaction information, and transaction statement. Wholesale distributors must capture the transaction information (including lot level information), transaction history, and transaction statements for each transaction described above, and maintain that information, history and statement for not less than six years after the date of the transaction.

The Defendants and Related Entities

9.  Defendant Edvin OVASAPYAN is the owner and operator of Mainspring Distribution, a Pennsylvania limited liability company. OVASAPYAN resides in the State of California.

10. Mainspring Distribution ("Mainspring") is a Pennsylvania corporate entity that has been licensed by the Commonwealth of Pennsylvania as a wholesale pharmaceutical distributor.

11. Defendant Hakob KOJOYAN resides in the State of California.

The Conspiracy and Scheme to Defraud

12. Beginning at a date unknown to the grand jury, but no later than on or about February 9, 2017, and continuing through a date unknown to the grand jury, but to at least on or about April 5, 2018, OVASAPYAN and KOJOYAN knowingly devised, intended to devise, and carried out a conspiracy and scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omissions and concealment of material facts with a duty to disclose.

As part of the conspiracy and scheme to defraud:

13. OVASAPYAN, through his control of Mainspring, sold or arranged to be sold large quantities of prescription pharmaceuticals to retail pharmacies and wholesalers across the United States. OVASAPYAN, KOJOYAN, and others known and unknown to the Grand Jury generated false and misleading documentation claiming that the drugs sold by Mainspring had been acquired in compliance with federal law from authorized trading partners who were licensed, legitimate suppliers. In sum, OVASAPYAN, KOJOYAN, and their coconspirators identified a licensed wholesaler in California (hereinafter, the LICENSED SUPPLIER) and then created paperwork falsely representing that

Mainspring's supply of prescription drugs had been acquired from the LICENSED SUPPLIER. In reality, Mainspring had never acquired any prescription drugs from the LICENSED SUPPLIER, and the drugs sold under that name had in fact been acquired from illicit, unlicensed sources.

14. In particular, when Mainspring sold prescription drugs to its customers, it provided those customers with documentation purporting to be the required transaction information, transaction statements, and transaction histories (collectively, "Transaction Documentation"). Provision of such documentation is required by the DSCSA. Since on or about February 2017, Transaction Documentation for Mainspring's sales, prepared in connection with certain transactions, represented that a particular supplier (hereinafter, "SUPPLIER ONE"), was the source from which Mainspring had acquired the drug. That Transaction Documentation was false and misleading.

15. The listed name for SUPPLIER ONE on the Transaction Documentation prepared in connection with certain transactions was misleadingly similar to the name of the LICENSED SUPPLIER, and it created the false impression that the prescription drugs in question had, in fact, been supplied by the LICENSED SUPPLIER. The Transaction Documentation buttressed this false impression by also listing the LICENSED SUPPLIER's business address in the state of California. Customers reviewing the Transaction Documentation purporting to identify the source of the prescription drugs would therefore see a name confusingly similar to the LICENSED SUPPLIER, in addition to the business address for the LICENSED SUPPLIER. In reality, the prescription drugs sold by Mainspring were acquired from other sources that were never disclosed to customers or reflected in the Transaction Documentation. In some instances, these prescription drugs were unlawfully acquired from unlicensed individuals operating in the State of California.

16. KOJOYAN and OVASAPYAN communicated frequently during the course of the conspiracy, and KOJOYAN knowingly participated in the scheme to mislead customers into believing that Mainspring's supply of prescription drugs was legitimate. KOJOYAN and OVASAPYAN monitored the licensure status for the LICENSED SUPPLIER, and in the event the license for the LICENSED SUPPLIER became inactive, OVASAPYAN and KOJOYAN would cease sales activity until the license was reactivated.

17. As a further part of the conspiracy and the scheme to defraud, OVASAPYAN,

INDICTMENT                                     3

KOJOYAN, and others established and caused to be established shell companies with names deceptively similar to the LICENSED SUPPLIER. OVASAPYAN and KOJOYAN then established and caused to be established bank accounts held in those deceptively similar corporate names. In order to conceal the fraud, OVASAPYAN and KOJOYAN arranged for Mainspring to transfer funds to these deceptively named accounts in order to create banking records superficially consistent with financial transfers to a legitimate, LICENSED SUPPLIER. However, Mainspring never transferred any funds to any bank account controlled by the LICENSED SUPPLIER, and it otherwise never did any business with the LICENSED SUPPLIER. In reality, the funds transferred from Mainspring to the accounts established by KOJOYAN and others were often liquidated and returned as proceeds to the co-conspirators, or else transferred to other bank accounts. Only a very small portion of the funds acquired by Mainspring from its customers was ever sent to a licensed prescription drug wholesaler.

COUNT ONE:          (18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud)

18.     Paragraphs 1 through 17 of this Indictment are re-alleged and incorporated as if fully set forth here.

19.     Beginning no later than on or about February 9, 2017, and continuing through at least on or about April 5, 2018, in the Northern District of California and elsewhere, the defendants,

EDVIN OVASAPYAN and
HAKOB KOJOYAN,

did knowingly conspire to devise and intend to devise a scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omissions and concealment of material facts with a duty to disclose, and, for the purpose of executing such scheme and artifice to defraud, to transmit and cause the transmission of wire communications in interstate commerce, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1349.

COUNTS TWO AND THREE:          (18 U.S.C. § 1343 and 2 – Wire Fraud and Aiding and Abetting)

20.     Paragraphs 1 through 19 of this Indictment are re-alleged and incorporated as if fully set forth here.

INDICTMENT                                          4

21. Beginning at a date unknown to the grand jury, but no later than on or about February 9, 2017, and continuing as to all defendants to a date unknown to the grand jury, but to at least on or about April 5, 2018, in the Northern District of California and elsewhere, the defendants,

EDVIN OVASAPYAN, and
HAKOB KOJOYAN

did knowingly and with the intent to defraud device and execute, and attempt to execute, a material scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omissions and concealment of material facts.

22. On or about the dates set forth below, in the Northern District of California and elsewhere, for the purpose of executing the scheme and artifice referred to above, and attempting to do so, the defendants did knowingly transmit and cause to be transmitted writings, signs, signals, pictures, and sounds in interstate commerce by means of wire communications:

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| 2 | 3/16/2018 | Electronic Transfer of $42,000 from Mainspring to Bank Account Domiciled in San Mateo, California |
| 3 | 4/5/2018 | Electronic Transfer of $15,000 from Mainspring to a Bank Account Domiciled in San Mateo, California |

All in violation of Title 18, United States Code, Sections 1343 and 2.

COUNT FOUR: (18 U.S.C. § 1956(h) – Conspiracy to Commit Laundering of Monetary Instruments)

23. Paragraphs 1 through 22 of this Indictment are re-alleged and incorporated as if fully set forth here.

24. Beginning at a date unknown to the grand jury, but no later than on or about February 9, 2017, and continuing as to all defendants to a date unknown to the grand jury, but to at least on or about April 5, 2018, in the Northern District of California and elsewhere, the defendants,

EDVIN OVASAPYAN, and
HAKOB KOJOYAN

INDICTMENT 5

and others known and unknown, unlawfully and knowingly conspired together and with one another to violate Title 18, United States Code, Section 1956(a)(1).

25. It was a part and an object of the conspiracy that the defendants, and others known and unknown to the grand jury, with the intent to promote the carrying on of specified unlawful activity and to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, to wit, conspiracy to commit wire fraud and wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1349, unlawfully and knowingly, and knowing that property involved in a financial transaction represents the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct financial transactions which in fact involved the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1).

All in violation of Title 18, United States Code, Section 1956(h).

COUNT FIVE:   (18 U.S.C. § 371 – Conspiracy to Engage in the Unlawful Wholesale Distribution of Drugs)

26. Paragraphs 1 through 25 of this Indictment are re-alleged and incorporated as if fully set forth here.

27. Beginning at a date unknown to the grand jury, but not later than February 9, 2017, and continuing to a date unknown to the grand jury, but to at least on or about April 5, 2018, in the Northern District of California and elsewhere, the defendants,

EDVIN OVASAPYAN, and
HAKOB KOJOYAN

and others known and unknown, did knowingly and intentionally conspire to:

    a) knowingly engage in the unlicensed wholesale distribution of prescription drugs in interstate commerce, in violation of Title 21, United States Code, Sections 331(t), 353(e)(1)(A), 333(b)(1)(D);

    b) engage in the wholesale distribution of prescription drugs without obtaining and providing truthful and accurate transaction histories, transaction statements, and transaction information, with intent to defraud and mislead, in violation of Title 21, United States Code, Sections 331(t), 360eee-1(c), and 333(a)(2); and

INDICTMENT                                      6

     c)    defraud the United States and its agencies by impeding, impairing, and defeating the lawful functions of the Food and Drug Administration to protect the health and safety of the public by ensuring that prescription drugs distributed in the United States were safe and effective from the time of manufacturing to the delivery to the entity that sells or dispenses the product to the ultimate consumer or patient.

<u>Manner and Means for Achieving the Objects of the Conspiracy</u>

28.    As part of the conspiracy, the coconspirators acquired prescription drugs from unlicensed dealers in the State of California and shipped them to a facility in the Commonwealth of Pennsylvania that was associated with Mainspring Distribution.

29.    The coconspirators then generated or caused to be generated Transaction Documentation falsely claiming that the prescription drugs had been acquired from the LICENSED SUPPLIER. This Transaction Documentation was distributed to Mainspring's customers, which included retail pharmacies in addition to other wholesale distributors.

30.    As part of the conspiracy, and in order to buttress the coconspirators' false claims as to the source of their prescription drugs, the coconspirators opened and caused to be opened bank accounts in the names of shell business entities with names deceptively similar to the name of the LICENSED SUPPLIER, which was the supposed source of the majority of Mainspring's pharmaceuticals

<u>Overt Acts</u>

31.    In furtherance of the conspiracy, and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Northern District of California and elsewhere:

     a)    On or about March 16, 2018, the defendants transferred and caused to be transferred $42,000 from an account held in the name of Mainspring Distribution to an account domiciled in San Mateo, California.

     b)    On or about April 5, 2018, the defendants transferred and caused to be transferred $15,000 from an account held in the name of Mainspring Distribution to an account domiciled in San Mateo, California

     c)    On or about April 14, 2017, the defendants caused Transaction Documentation to be generated for a customer that falsely and fraudulently misrepresented the source of a

INDICTMENT       7

1 | prescription drug products.

2 | All in violation of Title 18, United States Code, Section 371.

FORFEITURE ALLEGATION:    (18 U.S.C. §§ 981, 982, & 28 U.S.C. § 2461(c) – Criminal Forfeiture)

32. All of the allegations contained in this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461(c).

33. Upon a conviction for any offense alleged in Counts One through Three of this Indictment, the defendants,

EDVIN OVASAPYAN and
HAKOB KOJOYAN,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, constituting or derived from proceeds the defendants obtained directly and indirectly as the result of the violation, including but not limited to a forfeiture money judgment.

34. Upon a conviction for any offense alleged in Count Four of this Indictment, the defendants,

EDVIN OVASAPYAN and
HAKOB KOJOYAN,

shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), 982(a), and 28 U.S.C. § 2461(c), all property, real or personal, involved in or traceable to the violation, or constituting or derived from proceeds traceable directly and indirectly to a violation, including but not limited to a forfeiture money judgment.

35. Upon a conviction for any offense alleged in Count Five of this Indictment, the defendants,

EDVIN OVASAPYAN and
HAKOB KOJOYAN,

shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(7), and 28 U.S.C. § 2461(c), all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of the offense, including but not limited to a money judgment.

36. If any of the aforementioned property, as a result of any act or omission of the

INDICTMENT                                                   8

defendants –

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property that cannot be divided without difficulty;

any and all interest the defendants have in other property shall be vested in the United States and forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982.

All in violation of Title 18, United States Code, Sections 981 and 982; Title 28, United States Code, Section 2461(c); and Rule 32.2 of the Federal Rules of Criminal Procedure.

DATED: Nov. 1, 2018

A TRUE BILL

_____
FOREPERSON

ALEX G. TSE
United States Attorney

_____
STEPHANIE HINDS
Deputy Chief, Criminal Division

(Approved as to form: _____)
                          AUSA DAWSON

INDICTMENT                                         9