1   DAVID L. ANDERSON (CABN 149604)
    United States Attorney
2
    HALLIE HOFFMAN (CABN 210020)
3   Chief, Criminal Division

4   ANDREW F. DAWSON (CABN 264421)
    GREGG W. LOWDER (CABN 107864)
5   Assistant United States Attorneys

6        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
7        Telephone: (415) 436-7200
         FAX: (415) 436-7234
8        Email: Gregg.Lowder@usdoj.gov

9   Attorneys for United States of America

10                      UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13  UNITED STATES OF AMERICA,            )   CASE NO. CR 18-0533 RS
                                         )
14          Plaintiff,                   )   **RECORDED NOTICE OF PENDENCY OF**
                                         )   **ACTION (LIS PENDENS) AS TO REAL**
15     v.                                )   **PROPERTY AND IMPROVEMENTS**
                                         )   **LOCATED AT 4305 GROVES PLACE, SOMIS,**
16  EDVIN OVASAPYAN and                  )   **CALIFORNIA 93066 (APN 156-0-180-050)**
    HAKOB KOJOYAN,                       )
17                                       )
                                         )
18          Defendants.                  )
                                         )
    _____  )
19

20          The United States hereby submits the attached Recorded Notice of Pendency of Action (Lis

21  Pendens) as to Real Property and Improvements Located at 4305 Groves Place, Somis, California 93066

22  (APN 156-0-180-050).

23                                              Respectfully submitted,

24                                              DAVID L. ANDERSON
                                                United States Attorney
25  Dated: 4/10/2019

26                                              _____
                                                GREGG W. LOWDER
27                                              Assistant United States Attorney

28

RECORDED NOTICE OF LIS PENDENS
CR 18-0533 RS

1

## **CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies that she is an employee in the Office of the United States

3

Attorney for the Northern District of California and is a person of such age and discretion to be

4

competent to serve papers.  The undersigned further certifies that she caused a copy of

5

6
- Recorded Notice of Pendency of Action (Lis Pendens) as to Real Property and Improvements located at 4305 Groves Place, Somis California 93066

7

to be served this date via United States first class mail delivery upon the person(s) below at the place(s)

8

and address(es) which is the last known address(es):

9

| | |
|---|---|
| JPO22, LLC<br>4305 Groves Place<br>Somis, CA 93066 | JPO22, LLC<br>10380 Wilshire Blvd., #302<br>Los Angeles, CA 90040 |

10

11

12

I declare under penalty of perjury under the laws of the United States of America that the

13

foregoing is true and correct to the best of my knowledge.

14

Executed this 16th day of April, 2019 at San Francisco, California

15

16

17
CAROLYN JUSAY
FSA Paralegal
Asset Forfeiture Unit

18

19

20

21

22

23

24

25

26

27

28

RECORDED NOTICE OF LIS PENDENS
CR 18-0533 RS

**RECORDING REQUESTED BY:**

SIMPLIFILE

**WHEN RECORDED PLEASE MAIL TO:**
AUSA GREGG W. LOWDER
UNITED STATES ATTORNEYS OFFICE
450 GOLDEN GATE AVENUE, BOX 36055
SAN FRANCISCO, CA 94102
ATTN: ASSET FORFEITURE UNIT

(DOCUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS ABOVE)

20190402-00035179-0  1/23
**Ventura County Clerk and Recorder**
**MARK A. LUNN**
**04/02/2019 11:07:57 AM**
**1448872  $80.00  RE**

**Electronically Recorded in Official Records,**
**County of Ventura**

(SPACE ABOVE FOR RECORDER'S USE)

NOTICE OF LIS PENDENS AS TO REAL PROPERTY AND IMPROVEMENTS LOCATED AT
4305 GROVES PLACE, SOMIS, CALIFORNIA 93066

**(DOCUMENT TITLE)**

SEPARATE PAGE, PURSUANT TO CA. GOV'T. CODE 27361.6

DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

ANDREW F. DAWSON (CABN 264421)
GREGG W. LOWDER (CABN 107864)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7044
    FAX: (415) 436-6748
    Gregg.Lowder@usdoj.gov
    Andrew.Dawson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>   v.<br><br>EDVIN OVASAPYAN and<br>HAKOB KOJOYAN,<br><br>    Defendants. | No.   CR 18-0533 RS<br><br>**NOTICE OF PENDENCY OF ACTION (LIS PENDENS) AS TO REAL PROPERTY AND IMPROVEMENTS LOCATED AT 4305 GROVES PLACE, SOMIS, CALIFORNIA 93066 (APN 156-0-180-050)** |

    NOTICE IS HEREBY GIVEN that a criminal action has been commenced in the above-entitled

Court pursuant to an Indictment filed under the above case number (attached hereto as Exhibit A) and a

Third Bill of Particulars for Forfeiture of Property has been filed by the United States of America on

April 1, 2019 (attached hereto as Exhibit B) has been filed in the above case to secure the judicial

forfeiture to the United States of the real property and improvements located at 4305 Groves Place,

Somis, California 93066 (Assessors Parcel Number 156-0-180-050), which is further described in

Exhibit C (also attached hereto).

1   The United States alleges that the said real property is subject to forfeiture pursuant to 18 U.S.C.

2 § 981, 18 U.S.C. § 982 and 28 U.S.C. § 2461(c).

3   The owner of record to the said real property is JPO22, LLC.

4 DATED: 4/2/2019    Respectfully submitted,

5           DAVID L. ANDERSON
           United States Attorney

6

7           GREGG W. LOWDER
           Assistant United States Attorney

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Northern District of California and is a person of such age and discretion to be competent to serve papers.  The undersigned further certifies that she caused a copy of

- Notice of Pendency of Action (Lis Pendens) as to Real Property and Improvements located at 4305 Groves Place, Somis, California 93066

to be served this date via United States certified mail delivery and first class mail delivery upon the person(s) below at the place(s) and address(es) which is the last known address(es):

| JPO22, LLC<br>4305 Groves Place<br>Somis, CA 93066 | JPO22, LLC<br>10380 Wilshire Blvd., #302<br>Los Angeles, CA 90040 |
| --- | --- |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 2nd day of April, 2019, at San Francisco, California

Brenda Lukaitis
BRENDA LUKAITIS
FSA Paralegal
Asset Forfeiture Unit

NOTICE OF LIS PENDENS – 4305 GROVES PLACE, SOMIS CA
CR 18-0533 RS                    3

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    **CIVIL CODE § 1189**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                                     )
County of ___San Francisco___                          )

On _____April 2, 2019_____ before me, ___Tyle L. Doerr, Notary Public___,
　　　　　　　　Date　　　　　　　　　　　　　　*Here Insert Name and Title of the Officer*

personally appeared ___Gregg W. Lowder___
　　　　　　　　　　　　　　　　　　　*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

```
+-------------------------------------+
|        TYLE L. DOERR                 |
|     Commission # 2134483             |
|    Notary Public - California        |
|       San Francisco County           |
|   My Comm. Expires Nov 20, 2019      |
+-------------------------------------+
```

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
　　　　　　*Signature of Notary Public*

　　　　　*Place Notary Seal Above*
────────────────────────── **OPTIONAL** ──────────────────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document** Notice of Pendency of Action (Lis Pendens) as to Real
Property and Improvements Located at 4305 Groves Place, Somis,
Title or Type of Document: CA 93066 (APN 156-0-180-050)        Document Date: __04/2/19__
Number of Pages: ___21__ Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: ___Gregg W. Lowder___　　　Signer's Name: _____
☐ Corporate Officer — Title(s): _____　☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General　　　　　☐ Partner — ☐ Limited ☐ General
☒ Individual　　☐ Attorney in Fact　　　　☐ Individual　　☐ Attorney in Fact
☐ Trustee　　　☐ Guardian or Conservator　☐ Trustee　　　☐ Guardian or Conservator
☒ Other: _Assistant United States Attorney_　☐ Other: _____
Signer Is Representing: _United States Attorneys_　Signer Is Representing: _____
_Office - DOJ_

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

# Exhibit A

1  ALEX G. TSE (CABN 152348)
   United States Attorney
2

   FILED

3

   NOV – 1 2018

4
   SUSAN Y. SOONG
   CLERK, U.S. DISTRICT COURT
   NORTHERN DISTRICT OF CALIFORNIA
5

6

7

8                        UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10                         SAN FRANCISCO DIVISION

11  UNITED STATES OF AMERICA,            )  CASE NO.  **CR  18    533**  **RS**
                                         )
12  _     Plaintiff,                     )
                                         )
13  v.                                   )  VIOLATIONS: 18 U.S.C. § 1343 – Wire Fraud; 18
                                         )  U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;
14  EDVIN OVASAPYAN and                  )  18 U.S.C. § 1956(h) – Conspiracy to Commit
    HAKOB KOJOYAN,                       )  Laundering of Monetary Instruments; 18 U.S.C.
15                                       )  § 371 – Conspiracy to Engage in the Unlawful
        Defendants.                      )  Wholesale Distribution of Drugs; 18 U.S.C. § 2 –
16                                       )  Aiding and Abetting; 18 U.S.C. §§ 981, 982 & 28
                                         )  U.S.C. § 2461(c) – Criminal Forfeiture
17                                       )
                                         )  SAN FRANCISCO VENUE
18                                       )
                                         )
19                                       )

20                              I N D I C T M E N T

21  The Grand Jury charges:

22                              Introductory Allegations

23      At all times relevant to this Indictment:

24  Overview of the Regulation of the Distribution of Prescription Drugs

25      1.      The Food and Drug Administration ("FDA") is the federal agency of the United States

26  responsible for administering federal statutes and regulations aimed at protecting the health and safety of

27  United States citizens and residents by ensuring that, among other things, drugs are safe and effective for

28  their intended uses and that the labeling of such drugs bears true, complete, and accurate

                                            1

1   informationefore they may be offered and sold in the United States.

2       2.    One of the statutes that the FDA enforces is the Federal Food, Drug and Cosmetic Act

3   (FDCA) as amended by the Drug Supply Chain and Security Act (DSCSA), which is designed to,

4   among other things, ensure that drugs sold for human use are safe and effective for their intended uses.

5       3.    The FDCA defines a "drug" as: (A) articles recognized in the official United States

6   Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National

7   Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure,

8   mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food)

9   intended to affect the structure or any function of the body of man or other animals; and (D) articles

10   intended for use as a component of any articles specified in clause (A), (B), or (C).

11       4.    A "prescription drug" is any drug which, because of its toxicity and other potential for

12   harmful effects, or the method of its use, or the collateral measures necessary to its use, is not considered

13   safe for use except under the supervision of a practitioner licensed by State law to administer such drugs,

14   or any drug which is limited by an approved new drug application to use under the professional

15   supervision of a practitioner licensed by law to administer such drug.  21 U.S.C. §353(b)(1).

16       5.    On November 27, 2013, the DSCSA was enacted to better protect the integrity of the

17   nation's drug distribution system.  One of the intended results of the DSCSA is to prevent the practice

18   known as prescription drug diversion.   Under the DSCSA:

19       a)    "Wholesale Distribution" means distribution of a prescription drug to or receipt of

20       a prescription drug by a person other than a consumer or patient, but does not include

21       the lawful dispensing of a prescription drug pursuant to a prescription according to 21

22       U.S.C. §353(b)(1).

23       b)    A "wholesale distributor" of prescription drugs means a person (other than the

24       manufacturer, a manufacturer's co- licensed partner, a third party logistics provider, or

25       repackager) engaged in wholesale distribution.

26       c)    "Authorized" in the case of a wholesale distributor means having a valid license

27       under State law or 21 U.S.C. § 360eee-2, in accordance with 21 U.S.C. §360eee-1(a)(6).

28       d)    "Licensed," in the case of a wholesale distributor, means having a valid license in

1  accordance under 21 U.S.C. §353(e) or State law.

2      e)  "Transaction history" means a statement in paper or electronic form that includes

3  the transaction information for each prior transaction going back to the manufacturer of

4  the drug product.

5      f)  "Transaction information" includes, among other things, the strength and dosage

6  form of the drug product, the number of containers, the lot number of the drug product,

7  and the business name and address of the persons from whom and to whom ownership is

8  being transferred.

9      g)  " Transaction statement" means a statement in paper or electronic form that the

10  entity transferring ownership of a drug product is in compliance with certain provisions

11  of the DSCSA.

12      6.  Effective January 1, 2015, the FDCA, as amended by the DSCSA, imposes requirements

13  on wholesale distributors of most prescription drugs, including certain product tracing requirements.

14  Specifically:

15      a)  A wholesale distributor shall not accept ownership of a product unless the

16  previous owner prior to, or at the time of, the transaction provides the transaction history,

17  transaction information, and a transaction statement for the product.

18      b)  The trading partners of a wholesale distributor may only be authorized trading

19  partners.

20      7.  If a wholesale distributor purchased a product directly from the manufacturer, the

21  exclusive distributor of the manufacturer, or a repackager that purchased directly from the manufacturer,

22  then prior to, or at the time of, each transaction in which the wholesale distributor transfers ownership of

23  a product, the wholesale distributor shall provide to the subsequent purchaser—

24      a)  a transaction statement, which shall state that such wholesale distributor, or a

25  member of the affiliate of such wholesale distributor, purchased the product directly

26  from the manufacturer, exclusive distributor of the manufacturer, or repackager that

27  purchased the product directly from the manufacturer; and

28      b)  the transaction history and transaction information.

8.     Wholesale distributors of prescription drugs who did not purchase a prescription drug directly from the manufacturer, the exclusive distributor of the manufacturer, or a repackager directly from the manufacturer must, prior to or at the time of each transaction, provide to the subsequent purchaser a transaction history, transaction information, and transaction statement. Wholesale distributors must capture the transaction information (including lot level information), transaction history, and transaction statements for each transaction described above, and maintain that information, history and statement for not less than six years after the date of the transaction.

The Defendants and Related Entities

9.     Defendant Edvin OVASAPYAN is the owner and operator of Mainspring Distribution, a Pennsylvania limited liability company.  OVASAPYAN resides in the State of California.

10.     Mainspring Distribution ("Mainspring") is a Pennsylvania corporate entity that has been licensed by the Commonwealth of Pennsylvania as a wholesale pharmaceutical distributor.

11.     Defendant Hakob KOJOYAN resides in the State of California.

The Conspiracy and Scheme to Defraud

12.     Beginning at a date unknown to the grand jury, but no later than on or about February 9, 2017, and continuing through a date unknown to the grand jury, but to at least on or about April 5, 2018, OVASAPYAN and KOJOYAN knowingly devised, intended to devise, and carried out a conspiracy and scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omissions and concealment of material facts with a duty to disclose.

As part of the conspiracy and scheme to defraud:

13.     OVASAPYAN, through his control of Mainspring, sold or arranged to be sold large quantities of prescription pharmaceuticals to retail pharmacies and wholesalers across the United States. OVASAPYAN, KOJOYAN, and others known and unknown to the Grand Jury generated false and misleading documentation claiming that the drugs sold by Mainspring had been acquired in compliance with federal law from authorized trading partners who were licensed, legitimate suppliers. In sum, OVASAPYAN, KOJOYAN, and their coconspirators identified a licensed wholesaler in California (hereinafter, the LICENSED SUPPLIER) and then created paperwork falsely representing that

4

1   Mainspring's supply of prescription drugs had been acquired from the LICENSED SUPPLIER. In

2   reality, Mainspring had never acquired any prescription drugs from the LICENSED SUPPLIER, and the

3   drugs sold under that name had in fact been acquired from illicit, unlicensed sources.

4        14.    In particular, when Mainspring sold prescription drugs to its customers, it provided those

5   customers with documentation purporting to be the required transaction information, transaction

6   statements, and transaction histories (collectively, "Transaction Documentation"). Provision of such

7   documentation is required by the DSCSA. Since on or about February 2017, Transaction

8   Documentation for Mainspring's sales, prepared in connection with certain transactions, represented that

9   a particular supplier (hereinafter, "SUPPLIER ONE"), was the source from which Mainspring had

10   acquired the drug. That Transaction Documentation was false and misleading.

11        15.    The listed name for SUPPLIER ONE on the Transaction Documentation prepared in

12   connection with certain transactions was misleadingly similar to the name of the LICENSED

13   SUPPLIER, and it created the false impression that the prescription drugs in question had, in fact, been

14   supplied by the LICENSED SUPPLIER. The Transaction Documentation buttressed this false

15   impression by also listing the LICENSED SUPPLIER's business address in the state of California.

16   Customers reviewing the Transaction Documentation purporting to identify the source of the

17   prescription drugs would therefore see a name confusingly similar to the LICENSED SUPPLIER, in

18   addition to the business address for the LICENSED SUPPLIER. In reality, the prescription drugs sold

19   by Mainspring were acquired from other sources that were never disclosed to customers or reflected in

20   the Transaction Documentation. In some instances, these prescription drugs were unlawfully acquired

21   from unlicensed individuals operating in the State of California.

22        16.    KOJOYAN and OVASAPYAN communicated frequently during the course of the

23   conspiracy, and KOJOYAN knowingly participated in the scheme to mislead customers into believing

24   that Mainspring's supply of prescription drugs was legitimate. KOJOYAN and OVASAPYAN

25   monitored the licensure status for the LICENSED SUPPLIER, and in the event the license for the

26   LICENSED SUPPLIER became inactive, OVASAPYAN and KOJOYAN would cease sales activity

27   until the license was reactivated.

28        17.    As a further part of the conspiracy and the scheme to defraud, OVASAPYAN,

INDICTMENT                         3

1 KOJOYAN, and others established and caused to be established shell companies with names deceptively
2 similar to the LICENSED SUPPLIER. OVASAPYAN and KOJOYAN then established and caused to
3 be established bank accounts held in those deceptively similar corporate names. In order to conceal the
4 fraud, OVASAPYAN and KOJOYAN arranged for Mainspring to transfer funds to these deceptively
5 named accounts in order to create banking records superficially consistent with financial transfers to a
6 legitimate, LICENSED SUPPLIER. However, Mainspring never transferred any funds to any bank
7 account controlled by the LICENSED SUPPLIER, and it otherwise never did any business with the
8 LICENSED SUPPLIER. In reality, the funds transferred from Mainspring to the accounts established
9 by KOJOYAN and others were often liquidated and returned as proceeds to the co-conspirators, or else
10 transferred to other bank accounts. Only a very small portion of the funds acquired by Mainspring from
11 its customers was ever sent to a licensed prescription drug wholesaler.

12 COUNT ONE:                (18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud)

13       18.       Paragraphs 1 through 17 of this Indictment are re-alleged and incorporated as if fully set
14 forth here.

15       19.       Beginning no later than on or about February 9, 2017, and continuing through at least on
16 or about April 5, 2018, in the Northern District of California and elsewhere, the defendants,

17                          EDVIN OVASAPYAN and
                            HAKOB KOJOYAN,
18

19 did knowingly conspire to devise and intend to devise a scheme and artifice to defraud as to a material
20 matter, and to obtain money and property by means of materially false and fraudulent pretenses,
21 representations, and promises, and by omissions and concealment of material facts with a duty to
22 disclose, and, for the purpose of executing such scheme and artifice to defraud, to transmit and cause the
23 transmission of wire communications in interstate commerce, in violation of Title 18, United States
24 Code, Section 1343.

25       All in violation of Title 18, United States Code, Section 1349.

26 COUNTS TWO AND THREE:            (18 U.S.C. § 1343 and 2 – Wire Fraud and Aiding and Abetting)

27       20.       Paragraphs 1 through 19 of this Indictment are re-alleged and incorporated as if fully set
28 forth here.

INDICTMENT                                    4

21.    Beginning at a date unknown to the grand jury, but no later than on or about February 9, 2017, and continuing as to all defendants to a date unknown to the grand jury, but to at least on or about April 5, 2018, in the Northern District of California and elsewhere, the defendants,

EDVIN OVASAPYAN, and
HAKOB KOJOYAN

did knowingly and with the intent to defraud device and execute, and attempt to execute, a material scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omissions and concealment of material facts.

22.    On or about the dates set forth below, in the Northern District of California and elsewhere, for the purpose of executing the scheme and artifice referred to above, and attempting to do so, the defendants did knowingly transmit and cause to be transmitted writings, signs, signals, pictures, and sounds in interstate commerce by means of wire communications:

| COUNT | DATE | ITEM WIRED |
|-------|------|-----------|
| 2 | 3/16/2018 | Electronic Transfer of $42,000 from Mainspring to Bank Account Domiciled in San Mateo, California |
| 3 | 4/5/2018 | Electronic Transfer of $15,000 from Mainspring to a Bank Account Domiciled in San Mateo, California |

All in violation of Title 18, United States Code, Sections 1343 and 2.

COUNT FOUR:      (18 U.S.C. § 1956(h) – Conspiracy to Commit Laundering of Monetary Instruments)

23.    Paragraphs 1 through 22 of this Indictment are re-alleged and incorporated as if fully set forth here.

24.    Beginning at a date unknown to the grand jury, but no later than on or about February 9, 2017, and continuing as to all defendants to a date unknown to the grand jury, but to at least on or about April 5, 2018, in the Northern District of California and elsewhere, the defendants,

EDVIN OVASAPYAN, and
HAKOB KOJOYAN

1   and others known and unknown, unlawfully and knowingly conspired together and with one another to

2   violate Title 18, United States Code, Section 1956(a)(1).

3         25.     It was a part and an object of the conspiracy that the defendants, and others known and

4   unknown to the grand jury, with the intent to promote the carrying on of specified unlawful activity and

5   to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified

6   unlawful activity, to wit, conspiracy to commit wire fraud and wire fraud, in violation of Title 18,

7   United States Code, Sections 1343 and 1349, unlawfully and knowingly, and knowing that property

8   involved in a financial transaction represents the proceeds of some form of unlawful activity, would and

9   did conduct and attempt to conduct financial transactions which in fact involved the proceeds of

10   specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1).

11         All in violation of Title 18, United States Code, Section 1956(h).

12   <u>COUNT FIVE:</u>       (18 U.S.C. § 371 – Conspiracy to Engage in the Unlawful Wholesale

13                           Distribution of Drugs)

14         26.     Paragraphs 1 through 25 of this Indictment are re-alleged and incorporated as if fully set

15   forth here.

16         27.     Beginning at a date unknown to the grand jury, but not later than February 9, 2017, and

17   continuing to a date unknown to the grand jury, but to at least on or about April 5, 2018, in the Northern

18   District of California and elsewhere, the defendants,

19                          EDVIN OVASAPYAN, and

20                          HAKOB KOJOYAN

  and others known and unknown, did knowingly and intentionally conspire to:

21                a)     knowingly engage in the unlicensed wholesale distribution of prescription drugs

22                in interstate commerce, in violation of Title 21, United States Code, Sections 331(t),

23                353(e)(1)(A), 333(b)(1)(D);

24                b)     engage in the wholesale distribution of prescription drugs without obtaining and

25                providing truthful and accurate transaction histories, transaction statements, and

26                transaction information, with intent to defraud and mislead, in violation of Title 21,

27                United States Code, Sections 331(t), 360eee-1(c), and 333(a)(2); and

28

INDICTMENT                                   6

c)  defraud the United States and its agencies by impeding, impairing, and defeating the lawful functions of the Food and Drug Administration to protect the health and safety of the public by ensuring that prescription drugs distributed in the United States were safe and effective from the time of manufacturing to the delivery to the entity that sells or dispenses the product to the ultimate consumer or patient.

Manner and Means for Achieving the Objects of the Conspiracy

28.  As part of the conspiracy, the coconspirators acquired prescription drugs from unlicensed dealers in the State of California and shipped them to a facility in the Commonwealth of Pennsylvania that was associated with Mainspring Distribution.

29.  The coconspirators then generated or caused to be generated Transaction Documentation falsely claiming that the prescription drugs had been acquired from the LICENSED SUPPLIER.  This Transaction Documentation was distributed to Mainspring's customers, which included retail pharmacies in addition to other wholesale distributors.

30.  As part of the conspiracy, and in order to buttress the coconspirators' false claims as to the source of their prescription drugs, the coconspirators opened and caused to be opened bank accounts in the names of shell business entities with names deceptively similar to the name of the LICENSED SUPPLIER, which was the supposed source of the majority of Mainspring's pharmaceuticals

Overt Acts

31.  In furtherance of the conspiracy, and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Northern District of California and elsewhere:

a)  On or about March 16, 2018, the defendants transferred and caused to be transferred $42,000 from an account held in the name of Mainspring Distribution to an account domiciled in San Mateo, California.

b)  On or about April 5, 2018, the defendants transferred and caused to be transferred $15,000 from an account held in the name of Mainspring Distribution to an account domiciled in San Mateo, California

c)  On or about April 14, 2017, the defendants caused Transaction Documentation to be generated for a customer that falsely and fraudulently misrepresented the source of a

INDICTMENT                                    7

1    prescription drug products.

2   All in violation of Title 18, United States Code, Section 371.

3 <u>FORFEITURE ALLEGATION:</u> (18 U.S.C. §§ 981, 982, & 28 U.S.C. § 2461(c) – Criminal
4            Forfeiture)

5   32.  All of the allegations contained in this Indictment are re-alleged and by this reference

6 fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18,

7 United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461(c).

8   33.  Upon a conviction for any offense alleged in Counts One through Three of this

9 Indictment, the defendants,

          **EDVIN OVASAPYAN and**
10         **HAKOB KOJOYAN,**

11 shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all

12 property, real or personal, constituting or derived from proceeds the defendants obtained directly and

13 indirectly as the result of the violation, including but not limited to a forfeiture money judgment.

14   34.  Upon a conviction for any offense alleged in Count Four of this Indictment, the

15 defendants,

          **EDVIN OVASAPYAN and**
16         **HAKOB KOJOYAN,**

17 shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), 982(a), and 28 U.S.C.

18 § 2461(c), all property, real or personal, involved in or traceable to the violation, or constituting or

19 derived from proceeds traceable directly and indirectly to a violation, including but not limited to a

20 forfeiture money judgment.

21   35.  Upon a conviction for any offense alleged in Count Five of this Indictment, the

22 defendants,

          **EDVIN OVASAPYAN and**
23         **HAKOB KOJOYAN,**

24 shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(7), and 28 U.S.C. §

25 2461(c), all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross

26 proceeds traceable to the commission of the offense, including but not limited to a money judgment.

27   36.  If any of the aforementioned property, as a result of any act or omission of the

28

INDICTMENT          8

1  defendants –

2          a.      cannot be located upon the exercise of due diligence;

3          b.      has been transferred or sold to, or deposited with, a third person;

4          c.      has been placed beyond the jurisdiction of the Court;

5          d.      has been substantially diminished in value; or

6          e.      has been commingled with other property that cannot be divided without

7                  difficulty;

8  any and all interest the defendants have in other property shall be vested in the United States and

9  forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982.

10         All in violation of Title 18, United States Code, Sections 981 and 982; Title 28, United States

11  Code, Section 2461(c); and Rule 32.2 of the Federal Rules of Criminal Procedure.

12

13  DATED:  *Nov. 1, 2018*                          A TRUE BILL

14

15                                                  _Linda Jox_

16                                                  FOREPERSON

17  ALEX G. TSE
    United States Attorney
18

19

20  STEPHANIE HINDS
    Deputy Chief, Criminal Division
21

22

23  (Approved as to form:                    )
                            AUSA DAWSON
24

25

26

27

28

INDICTMENT                               9

# Exhibit B

1

2  DAVID L. ANDERSON (CABN 149604)
   United States Attorney

3  HALLIE HOFFMAN (CABN 210020)
   Chief, Criminal Division

4

5  ANDREW F. DAWSON (CABN 264421)
   GREGG W. LOWDER (CABN 107864)
   Assistant United States Attorneys

6

7      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
       Telephone: (415) 436-7200

8      FAX: (415) 436-6748
       Email: Gregg.Lowder@usdoj.gov

9

10  Attorneys for United States of America

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14

15  UNITED STATES OF AMERICA,              )   CASE NO.  CR 18-0533 RS
                                           )
16        Plaintiff,                       )   **THIRD BILL OF PARTICULARS FOR THE**
                                           )   **FORFEITURE OF PROPERTY**
17     v.                                  )
                                           )
18  EDVIN OVASAPYAN and                    )
    HAKOB KOJOYAN,                         )
19                                         )
                                           )
20        Defendant.                       )

21

22        The United States of America, by and through David L. Anderson, United States Attorney for the

23  Northern District of California, and Gregg W. Lowder, Assistant United States Attorney, hereby files the

24  following Third Bill of Particulars for notice of forfeiture of property.

25  ///

26  ///

27  ///

28  Third Bill of Particulars for Forfeiture of Property
    CR 18-0533 RS
                                    1

1    The Indictment in the above-captioned case filed on November 1, 2018, provides notice of and

2  seeks the forfeiture of both real and personal property pursuant to 18 U.S.C. §§ 981 and 982 and 28

3  U.S.C. § 2461(c). The United States hereby gives notice that, in addition to any property already listed

4  in the forfeiture allegation, the Bill of Particulars for forfeiture of property filed on January 10, 2019,

5  and the Second Bill of Particulars for forfeiture property filed on February 14, 2019, the United States is

6  additionally seeking forfeiture of the following property:

7    • Real Property and Improvements located at 2481 N. Junipero Avenue, Palm Springs,

8      California 92262;

9    • Real Property and Improvements located at 383 Kalaimoku, Ritz Calton Tower 2,

10      Unit 3106, Honolulu, Hawaii 96815, titled in the name of ESJ Group, LLC;

11    • Real Property and Improvements located at 8654 Washington Blvd., Culver City,

12      California 90232, titled in the name of JPO22, LLC;

13    • Real Property and Improvements located at 4305 Groves Place, Somis, California 93066;

14    • Real Property and Improvements located at 4314 Marina City Drive, Apt 416, Marina

15      Del Rey, California 90292;

16  DATED: April 1, 2019                    Respectfully submitted,

17

18                                         DAVID L. ANDERSON
                                           United States Attorney
19

20                                         GREGG W. LOWDER
                                           Assistant United States Attorney
21

22

23

24

25

26

27

28  Third Bill of Particulars for Forfeiture of Property
    CR 18-0533 RS
                                             2

# Exhibit C

All that certain real property situated in the County of Ventura, State of California, described as follows:

Parcel A:

Parcel 3, in the City of County of Ventura, State of California, as shown on a Parcel Map filed in Book 25, Pages 30 and 31, of Parcel Maps, in the office of the County Recorder of said County.

Except all oil, mineral, gas and other hydrocarbon substances below a depth of five hundred (500) feet under the subject property, without the right of surface entry; provided that this reservation shall run for a period of ten (10) years and so long thereafter, but not to exceed fifty-nine (59) years, as mineral, oil, gas or other hydrocarbon substances, or any of them are produced or mined from the herein described real property in paying or commercial quantities. If at the end of said ten (10) year term, or of thereafter, for any period of twelve (12) consecutive months, oil, gas, minerals or other hydrocarbon substances, or any of them, is not being produced or mined from said land or any portion thereof in paying or commercial quantities, then this reservation and the rights of grantor and its successors or assigns hereunder shall terminate.

Also except all oil, mineral, gas and other hydrocarbon substances below a depth of five hundred (500) feet under the subject property, without the right of surface entry, as reserved by Joseph L. Friedrich, in deed recorded September 21, 1978 as Instrument No. 101036, in Book 5214 Page 257 of Official Records.

Parcel B:

An easement for road and utility purposes over, under, through and across that portion of Strip 1 as said strip is shown on parcel map filed in Book 16, Page 97 of Parcel Maps, the office of the County Recorded, County of Ventura, State of California, lying Easterly of the Westerly terminus of the 21st course of said Strip, except therefrom any portion of said Strip 1 lying within Parcel A above.

Parcel C:

An easement for road and utility purposes over, under, through and across a strip of land, 30 feet in width, lying equally on either side of the following described line:

Those portions of Tract 55, T.R. Bard and that certain parcel marked "Peter Rice", Rancho Las Posas, in the County of Ventura, State of California, according to the map recorded in Book 3 Page 22 of Maps, in the office of the County Recorder of said County, described as a whole as follows:

Beginning at a 1-1/2 inch iron pipe set at the intersection of the West line of the property conveyed to Berylwood Investment Co., as recorded in Book 124, Page 291 of Deeds, in the office of the County Recorder of said County and the Northerly line of Las Posas Road, 60 feet wide, as shown on a map recorded in Book 37, Page 64 of Records of Survey, in the office of the County Recorder of said County; thence Northeasterly along said Northerly line of Los Posas Road, North 74° 26' 21" East 15.04 feet to the true point of beginning; thence;

1st:  North 11° 14' 33" West 1267.65 feet; thence,

2nd:  North 70° 25' 00" East 101.98 feet; thence,

3rd:  North 41° 10' 30" East 56 feet; thence,

4th:  North 74° 08' 10" East 216 feet; thence,

5th:  North 34° 17' 10" East 745 feet; thence,

6th:  North 37° 11' 40" East 513 feet, thence

7th:  North 34° 02' 13" East 207 feet; thence

8th:  North 61° 22' 20" East 167 feet to the Westerly terminus of the line shown as North 71° 00' 02" East 155 feet along the Northerly line of Parcel 3 as shown on a map filed in Book 16, Page 98 of Parcel Maps.

Parcel D:

An easement for road and utilities over, under, through and across that certain strip of land shown as "Strip 2 proposed 50' maintenance and utilities easement" as said strip is shown on the map of Tract No. 2320 recorded in Book 64, Page 76 of Maps, in the office of the County Recorder of said County, County of Ventura.

Parcel E:

An easement for road and utility purposes over, under, through and across a portion of Parcel 1 as said parcel is shown on a parcel map filed in Book 16, Page 97 of Parcel Maps, in the office of the County Recorder of said County, County of Ventura, State of California, lying 30 feet Northeasterly of the following described line:

Beginning at the Northwesterly corner of said Parcel 1; thence,

1st:  South 35° 10' 50" East 550 feet along the Westerly boundary of said Parcel 1 to a terminus.

Parcel F:

An easement for road and utility purposes over, under, through and across the Northeasterly 30 feet of Parcels 1 and 2 of Parcel Map filed in Book 25, Pages 30 and 31 of Parcel Maps, in the office of the County Recorder of said County, County of Ventura, State of California.

Assessor's Parcel Number: 156-0-180-050