# United States District Court

### FOR THE
### NORTHERN DISTRICT OF CALIFORNIA

## VENUE: SAN FRANCISCO

UNITED STATES OF AMERICA,

V.



FILED

SEP - 5 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

~~UNDER SEAL~~

EDVIN OVASAPYAN, HAKOB KOJOYAN, LORIK PAPYAN, and STEPHEN SILVERMAN,

*CR 18-533 RS*

DEFENDANT(S).

## SUPERSEDING INDICTMENT

18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud;
18 U.S.C. § 1956(h) – Conspiracy to Commit Laundering of Monetary Instruments;
18 U.S.C. § 371 – Conspiracy to Engage in the Unlawful Wholesale Distribution of Drugs;
18 U.S.C. § 2 – Aiding and Abetting;
18 U.S.C. §§ 981, 982, 21 U.S.C. § 853 & 28 U.S.C. § 2461(c) – Criminal Forfeiture

A true bill.

_____
Foreman

Filed in open court this ___5___ day of _Sept 2019_

KAREN L. HOM

JOSEPH C. SPERO
UNITED STATES MAGISTRATE JUDGE                    Clerk

Bail, $ _arrest warrant for Silverman_

51-mfr

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☒ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

### OFFENSE CHARGED

Ct 1: 18 U.S.C. 1349 - Conspiracy to Commit Wire Fraud
Ct 2: 18 U.S.C. 1956(h) - Money Laundering Conspiracy
Ct 3: 18 U.S.C. 371 - Conspiracy to Engage in the Unlawful
Wholesale Distribution of Drugs

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   See Attachment

DEFENDANT - U.S

▶ Edvin OVASAPYAN

FILED

DISTRICT COURT NUMBER

CR 18-533

SEP - 5 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DEFENDANT

UNDER SEAL

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:
  ☐ U.S. ATTORNEY  ☐ DEFENSE

} SHOW
DOCKET NO.

☐ this prosecution relates to a
pending case involving this same
defendant

} MAGISTRATE
CASE NO.

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under

}

Name and Office of Person
Furnishing Information on this form   DAVID L. ANDERSON

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   Andrew F. Dawson

### IS NOT IN CUSTODY

Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior
   summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☒ Is on Bail or Release from (show District)

N.D. Cal.

### IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction }   ☐ Federal  ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

_____

Has detainer  ☐ Yes   If "Yes"
been filed?   ☐ No    give date
                      filed   _____

DATE OF
ARREST   Month/Day/Year _____

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED   Month/Day/Year
TO U.S. CUSTODY    _____

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:

☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

_____

Bail Amount:  _____

*Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____   Before Judge: _____

Comments:



FILED

SEP – 5 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**Attachment A to AO 91**

# UNITED STATES v. EDVIN OVASAPYAN

---

**Count 1: 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud**

---

Maximum Penalties:

      20 years in prison
      $250,000 fine, or twice the gross gain or loss
      3 years' supervised release
      $100 special assessment
      Forfeiture
      Potential deportation

---

**Count 2: 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering**

---

Maximum Penalties:

      20 years in prison
      $500,000 fine or twice the value of the property involved in the transaction
      3 years' supervised release
      $100 special assessment
      Forfeiture
      Potential deportation

---

**Count 3: 18 U.S.C. § 371 – Conspiracy to Engage in the Unlawful Wholesale Distribution of Drugs**

---

Maximum Penalties:

      5 years in prison
      $250,000 fine or twice the value of the property involved in the transaction
      3 years' supervised release
      $100 special assessment
      Forfeiture
      Potential Deportation

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☒ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

---— OFFENSE CHARGED —---

Ct 1: 18 U.S.C. 1349 - Conspiracy to Commit Wire Fraud
Ct 2: 18 U.S.C. 1956(h) - Money Laundering Conspiracy
Ct 3: 18 U.S.C. 371 - Conspiracy to Engage in the Unlawful
Wholesale Distribution of Drugs

☐ Petty
☐ Minor
☐ Misde-
   meanor
☒ Felony

PENALTY:   See Attachment

~~UNDER SEAL~~

┌— DEFENDANT - U.S ——

▶ Hakob KOJOYAN

DISTRICT COURT NUMBER

CR 18-533

*FILED*

SEP - 5 2019

SUSAN Y. SOONG
NORTH DISTRICT OF CALIFORNIA
U.S. DISTRICT COURT

---— PROCEEDING —---

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:
☐ U.S. ATTORNEY  ☐ DEFENSE

} SHOW
DOCKET NO.

☐ this prosecution relates to a
pending case involving this same
defendant

☐ prior proceedings or appearance(s)
☒ before U.S. Magistrate regarding this
defendant were recorded under

} MAGISTRATE
CASE NO.

3:18-70612 MAG

Name and Office of Person
Furnishing Information on this form       DAVID L. ANDERSON

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)       Andrew F. Dawson

┌— DEFENDANT —

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior
summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☒ Is on Bail or Release from (show District)

N.D. Cal.

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges

} ☐ Federal  ☐ State

If answer to (6) is "Yes", show name of institution

_____

Has detainer  ☐ Yes
been filed?    ☐ No

} If "Yes"
give date
filed

DATE OF
ARREST ▶

Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED
TO U.S. CUSTODY ▶

Month/Day/Year

☐ This report amends AO 257 previously submitted

---— ADDITIONAL INFORMATION OR COMMENTS —---

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

Bail Amount: _____

*Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment*

Date/Time: _____       Before Judge: _____

Comments:

**Attachment A to AO 91**

**UNITED STATES v. HAKOB KOJOYAN**

FILED

SEP - 5 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

---

**Count 1: 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud**

Maximum Penalties:
        20 years in prison
        $250,000 fine, or twice the gross gain or loss
        3 years' supervised release
        $100 special assessment
        Forfeiture
        Potential deportation

---

**Count 2: 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering**

Maximum Penalties:
        20 years in prison
        $500,000 fine or twice the value of the property involved in the transaction
        3 years' supervised release
        $100 special assessment
        Forfeiture
        Potential deportation

---

**Count 3: 18 U.S.C. § 371 – Conspiracy to Engage in the Unlawful Wholesale Distribution of Drugs**

Maximum Penalties:
        5 years in prison
        $250,000 fine or twice the value of the property involved in the transaction
        3 years' supervised release
        $100 special assessment
        Forfeiture
        Potential Deportation

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☒ SUPERSEDING

---

**OFFENSE CHARGED**

Ct 1: 18 U.S.C. 1349 - Conspiracy to Commit Wire Fraud
Ct 2: 18 U.S.C. 1956(h) - Money Laundering Conspiracy
Ct 3: 18 U.S.C. 371 - Conspiracy to Engage in the Unlawful
Wholesale Distribution of Drugs

PENALTY:   See Attachment

☐ Petty
☐ Minor
☐ Misde-
    meanor
☒ Felony

---

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

---

**DEFENDANT - U.S**

▸ Lorik PAPYAN

DISTRICT COURT NUMBER

CR 18-533

**UNDER SEAL**

FILED

SEP - 5 2019

SUSAN Y. SOONG
DEFENDANT   DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

---

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:
    ☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW
DOCKET NO.

☐ this prosecution relates to a
pending case involving this same
defendant

MAGISTRATE
CASE NO.

☒ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under

3:19-70437 MAG

Name and Office of Person
Furnishing Information on this form      DAVID L. ANDERSON

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)          Andrew F. Dawson

---

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior
      summons was served on above charges  ▸

2) ☐ Is a Fugitive

3) ☒ Is on Bail or Release from (show District)

N.D. Cal.

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction       } ☐ Federal   ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer   ☐ Yes   } If "Yes"
been filed?                 give date
               ☐ No         filed

DATE OF
ARREST                    Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED  ▸        Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

---

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:

☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT      Bail Amount:

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Date/Time:                          Before Judge:

Comments:

**Attachment A to AO 91**

# UNITED STATES v. LORIK PAPYAN



FILED

SEP - 5 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIF.

---

**Count 1: 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud**

Maximum Penalties:
> 20 years in prison
> $250,000 fine, or twice the gross gain or loss
> 3 years' supervised release
> $100 special assessment
> Forfeiture
> Potential deportation

---

**Count 2: 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering**

Maximum Penalties:
> 20 years in prison
> $500,000 fine or twice the value of the property involved in the transaction
> 3 years' supervised release
> $100 special assessment
> Forfeiture
> Potential deportation

---

**Count 3: 18 U.S.C. § 371 – Conspiracy to Engage in the Unlawful Wholesale Distribution of Drugs**

Maximum Penalties:
> 5 years in prison
> $250,000 fine or twice the value of the property involved in the transaction
> 3 years' supervised release
> $100 special assessment
> Forfeiture
> Potential Deportation

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☒ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

#### — OFFENSE CHARGED —

Ct 1: 18 U.S.C. 1349 - Conspiracy to Commit Wire Fraud
Ct 2: 18 U.S.C. 1956(h) - Money Laundering Conspiracy
Ct 3: 18 U.S.C. 371 - Conspiracy to Engage in the Unlawful
Wholesale Distribution of Drugs

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   See Attachment

#### — DEFENDANT - U.S —

▶ Stephen SILVERMAN

DISTRICT COURT NUMBER

CR 18-533

FILED

SEP - 5 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNDER SEAL

#### — PROCEEDING —

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   DAVID L. ANDERSON

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   Andrew F. Dawson

#### — DEFENDANT —

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction   } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes    If "Yes"
been filed?  ☐ No    give date filed

DATE OF ARREST ▶    Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ▶    Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

#### — ADDITIONAL INFORMATION OR COMMENTS —

PROCESS:

☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT    Bail Amount: _____

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time: _____    Before Judge: _____

Comments:



**Attachment A to AO 91**

**UNITED STATES v. STEPHEN SILVERMAN**

FILED

SEP - 5 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

| Count 1: 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud |
|---|

Maximum Penalties:
     20 years in prison
     $250,000 fine, or twice the gross gain or loss
     3 years' supervised release
     $100 special assessment
     Forfeiture
     Potential deportation

| Count 2: 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering |
|---|

Maximum Penalties:
     20 years in prison
     $500,000 fine or twice the value of the property involved in the transaction
     3 years' supervised release
     $100 special assessment
     Forfeiture
     Potential deportation

| Count 3: 18 U.S.C. § 371 – Conspiracy to Engage in the Unlawful Wholesale Distribution of Drugs |
|---|

Maximum Penalties:
     5 years in prison
     $250,000 fine or twice the value of the property involved in the transaction
     3 years' supervised release
     $100 special assessment
     Forfeiture
     Potential Deportation

1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney





UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>EDVIN OVASAPYAN, HAKOB KOJOYAN,<br>LORIK PAPYAN, and STEPHEN<br>SILVERMAN<br><br>    Defendants. | CASE NO. CR 18-533 RS<br><br>VIOLATIONS: 18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1956(h) – Conspiracy to Commit Laundering of Monetary Instruments; 18 U.S.C. § 371 – Conspiracy to Engage in the Unlawful Wholesale Distribution of Drugs; 18 U.S.C. § 2 – Aiding and Abetting; 18 U.S.C. §§ 981, 982, 21 U.S.C. § 853 & 28 U.S.C. § 2461(c) – Criminal Forfeiture<br><br>SAN FRANCISCO VENUE |

S U P E R S E D I N G   I N D I C T M E N T

The Grand Jury charges:

Introductory Allegations

At all times relevant to this Indictment:

Overview of the Regulation of the Distribution of Prescription Drugs

1.     The Food and Drug Administration ("FDA") was the federal agency of the United States responsible for administering federal statutes and regulations aimed at protecting the health and safety of United States citizens and residents by ensuring that, among other things, drugs were safe and effective for their intended uses and that the labeling of such drugs bore true, complete, and accurate information before they may be offered and sold in the United States.

SUPERSEDING INDICTMENT                    1

1    2.    The FDA enforced the Federal Food, Drug and Cosmetic Act ("FDCA"), as amended by

2    the Drug Supply Chain and Security Act ("DSCSA"), which, among other things, was designed to

3    ensure that drugs sold for human use were safe and effective for their intended uses.

4    3.    The FDCA defined a "drug" as: (A) articles recognized in the official United States

5    Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States, or official National

6    Formulary, or any supplement to any of them; (B) articles intended for use in the diagnosis, cure,

7    mitigation, treatment, or prevention of disease in man or other animals; (C) articles (other than food)

8    intended to affect the structure or any function of the body of man or other animals; and (D) articles

9    intended for use as a component of any articles specified in clause (A), (B), or (C).

10    4.    A "prescription drug" was any drug "intended for use by man" which, "(A) because of its

11    toxicity or other potentiality for harmful effects, or the method of its use, or the collateral measures

12    necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to

13    administer such drugs," or any drug which "(B) is limited by an approved [new drug] application . . . to

14    use under the professional supervision of a practitioner licensed by law to administer such drug." 21

15    U.S.C. §353(b)(1).

16    5.    On November 27, 2013, the DSCSA was enacted to better protect the integrity of the

17    nation's drug distribution system. One of the intended results of the DSCSA was to prevent the practice

18    known as prescription drug diversion.  Under the DSCSA:

19         a)    "Wholesale Distribution" meant distribution of a prescription drug to or receipt of

20              a prescription drug by a person other than a consumer or patient, but does not include

21              the lawful dispensing of a prescription drug pursuant to a prescription according to 21

22              U.S.C. §353(b)(1).

23         b)    A "wholesale distributor" of prescription drugs meant a person (other than the

24              manufacturer, a manufacturer's co- licensed partner, a third party logistics provider, or

25              repackager) engaged in wholesale distribution.

26         c)    "Authorized" in the case of a wholesale distributor meant having a valid license

27              under State law or 21 U.S.C. § 360eee-2, in accordance with 21 U.S.C. §360eee-1(a)(6).

28         d)    "Licensed," in the case of a wholesale distributor, meant having a valid license in

accordance under 21 U.S.C. §353(e) or State law.

    e)    "Transaction history" meant a statement in paper or electronic form that includes the transaction information for each prior transaction going back to the manufacturer of the drug product.

    f)    "Transaction information" included, among other things, the strength and dosage form of the drug product, the number of containers, the lot number of the drug product, and the business name and address of the persons from whom and to whom ownership is being transferred.

    g)    "Transaction statement" meant a statement in paper or electronic form that the entity transferring ownership of a drug product is in compliance with certain provisions of the DSCSA.

6.    Effective January 1, 2015, the FDCA, as amended by the DSCSA, imposed requirements on wholesale distributors of most prescription drugs, including certain product tracing requirements. Specifically:

    a)    A wholesale distributor was prohibited from accepting ownership of a product unless the previous owner prior to, or at the time of, the transaction provided the transaction history, transaction information, and a transaction statement for the product.

    b)    The trading partners of a wholesale distributor may only be authorized trading partners.

7.    If a wholesale distributor purchased a product directly from the manufacturer, the exclusive distributor of the manufacturer, or a repackager that purchased directly from the manufacturer, then prior to, or at the time of, each transaction in which the wholesale distributor transferred ownership of a product, the wholesale distributor was required to provide to the subsequent purchaser—

    a)    a transaction statement, which was required to state that such wholesale distributor, or a member of the affiliate of such wholesale distributor, purchased the product directly from the manufacturer, exclusive distributor of the manufacturer, or repackager that purchased the product directly from the manufacturer; and

    b)    the transaction history and transaction information.

8.      Wholesale distributors of prescription drugs who did not purchase a prescription drug directly from the manufacturer, the exclusive distributor of the manufacturer, or a repackager directly from the manufacturer must have, prior to or at the time of each transaction, provided to the subsequent purchaser a transaction history, transaction information, and transaction statement.  Wholesale distributors were required to capture the transaction information (including lot level information), transaction history, and transaction statements for each transaction described above, and maintain that information, history and statement for not less than six years after the date of the transaction.

<u>The Defendants and Related Entities</u>

9.      Defendant Edvin OVASAPYAN was the owner and operator of Mainspring Distribution, a Pennsylvania limited liability company.  OVASAPYAN resided in the State of California.

10.      Mainspring Distribution ("Mainspring") was a Pennsylvania corporate entity that has been licensed by the Commonwealth of Pennsylvania as a wholesale pharmaceutical distributor.

11.      Defendant Hakob KOJOYAN resided in the State of California.

12.      Defendant Lorik PAPYAN resided in the State of California.

13.      Defendant Stephen SILVERMAN resided in the State of California.  SILVERMAN was an attorney licensed to practice law in the State of California.

<u>The Conspiracy and Scheme to Defraud</u>

14.      Beginning at a date unknown to the grand jury, but no later than on or about February 9, 2017, and continuing through a date unknown to the grand jury, but to at least on or about March 25, 2019, OVASAPYAN, KOJOYAN, PAPYAN, and SILVERMAN knowingly devised, intended to devise, and carried out a conspiracy and scheme and artifice to defraud as to a material matter, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts and omissions of material facts with a duty to disclose.

As part of the conspiracy and scheme to defraud:

15.      OVASAPYAN, through his control of Mainspring, sold or arranged to be sold large quantities of prescription drugs to retail pharmacies and wholesalers across the United States. Mainspring specialized in the distribution of various prescription drugs used to treat the Human Immunodeficiency Virus ("HIV").  OVASAPYAN, KOJOYAN, PAPYAN, and others known and

SUPERSEDING INDICTMENT                    4

1   unknown to the Grand Jury generated false and misleading documentation claiming that the HIV drugs

2   sold by Mainspring had been acquired in compliance with federal law from authorized trading partners

3   who were licensed, legitimate suppliers. In sum, OVASAPYAN, KOJOYAN, PAPYAN, and their

4   coconspirators identified a licensed wholesaler in California (hereinafter, the LICENSED SUPPLIER)

5   and then created paperwork falsely representing that Mainspring's supply of prescription drugs had been

6   acquired from the LICENSED SUPPLIER. In reality, Mainspring had never acquired any prescription

7   drugs from the LICENSED SUPPLIER, and the drugs sold under that name had in fact been acquired

8   from unlicensed sources on the black market.

9          16.    In particular, when Mainspring sold prescription drugs to its customers, it provided those

10   customers with documentation purporting to be the required transaction information, transaction

11   statements, and transaction histories (collectively, "Transaction Documentation"). Provision of such

12   documentation was required by the DSCSA. Since on or about February 2017, and continuing through

13   approximately November 2018, the vast majority of the Transaction Documentation for Mainspring's

14   sales, prepared in connection with certain transactions, represented that a particular supplier (hereinafter,

15   "SUPPLIER ONE"), was the source from which Mainspring had acquired the drug. That Transaction

16   Documentation was materially false and misleading.

17          17.    The listed name for SUPPLIER ONE on the Transaction Documentation prepared in

18   connection with certain transactions was misleadingly similar to the name of the LICENSED

19   SUPPLIER, and it created the false impression that the prescription drugs in question had, in fact, been

20   supplied by the LICENSED SUPPLIER. The Transaction Documentation buttressed this false

21   impression by also listing the LICENSED SUPPLIER's business address in the State of California.

22   Customers reviewing the Transaction Documentation purporting to identify the source of the

23   prescription drugs would therefore see a name confusingly similar to the LICENSED SUPPLIER, in

24   addition to the business address for the LICENSED SUPPLIER. In reality, the vast majority of the

25   prescription drugs sold by Mainspring were acquired from other sources that were never disclosed to

26   customers or reflected in the Transaction Documentation. In most instances, these prescription drugs

27   were unlawfully acquired from unlicensed individuals operating in the State of California.

28          18.    OVASAPYAN, KOJOYAN, and PAPYAN communicated frequently during the course

SUPERSEDING INDICTMENT                          3

of the conspiracy, and KOJOYAN and PAPYAN knowingly participated in the scheme to mislead customers into believing that Mainspring's supply of prescription drugs was legitimate.  KOJOYAN and OVASAPYAN monitored the licensure status for the LICENSED SUPPLIER, and in the event the license for the LICENSED SUPPLIER became inactive, OVASAPYAN and KOJOYAN would cease sales activity until the license was reactivated.

19.    As a further part of the conspiracy and the scheme to defraud, OVASAPYAN, KOJOYAN, and others established and caused to be established shell companies with names deceptively similar to the LICENSED SUPPLIER.  OVASAPYAN and KOJOYAN then established and caused to be established bank accounts held in those deceptively similar corporate names.  In order to conceal the fraud, OVASAPYAN and KOJOYAN arranged for Mainspring to transfer funds to these deceptively named accounts in order to create banking records superficially consistent with financial transfers to a legitimate, LICENSED SUPPLIER.  However, Mainspring never transferred any funds to any bank account controlled by the LICENSED SUPPLIER, and it otherwise never did any business with the LICENSED SUPPLIER.  In reality, the funds transferred from Mainspring to the accounts established by KOJOYAN and others were often liquidated and returned as proceeds to the coconspirators, or else transferred to other bank accounts.  Only a very small portion of the funds acquired by Mainspring from its customers was ever sent to licensed prescription drug wholesalers.  Over the course of the scheme, Mainspring was paid more than $70,000,000 by its customers.

20.    SILVERMAN was member of the scheme during this same time period, and he joined the conspiracy knowing its illicit nature and intending to help further the conspiracy.  SILVERMAN and OVASPAYAN communicated frequently via email and other means, and SILVERMAN agreed to and did ghostwrite communications in furtherance of the scheme at OVASAPYAN's request. SILVERMAN assisted in financing the scheme in its early stages, obtained necessary licenses to further the scheme, established or caused to be established corporate entities and associated bank accounts, and received a portion of the profits once the scheme was operational.

21.    As a further part of the conspiracy and the scheme to defraud, PAPYAN and SILVERMAN sought to continue the scheme to defraud after Mainspring ceased operations in or about November 2018.  PAPYAN, SILVERMAN, and others known and unknown to the Grand Jury,

SUPERSEDING INDICTMENT                          4

1  participated in negotiations and preliminary steps in early 2019 to use a licensed prescription drug

2  wholesaler in the State of Washington to distribute large quantities of diverted prescription drugs.

3  PAPYAN took steps to generate misleading business records regarding the new drug wholesaler and

4  acquired a large supply of diverted prescription drugs to be distributed via that wholesaler.  With

5  knowledge of the scheme, SILVERMAN offered advice regarding avoiding detection by law

6  enforcement and assisted his coconspirators with acquiring certain state licenses to further the scheme.

7       22.    In the course of the conspiracy, the coconspirators caused email messages to be sent from

8  individuals in and around Los Angeles, California, to an unwitting Mainspring employee working in

9  Pennsylvania.  The coconspirators also caused various financial transfers, representing payments made

10  by customers to Mainspring in exchange for prescription drugs, to be made between customers in

11  various states, such as New York, and the Mainspring bank account, which was controlled from in and

12  around Los Angeles, California.

13  COUNT ONE:        (18 U.S.C. § 1349 – Conspiracy to Commit Wire Fraud)

14       23.    Paragraphs 1 through 22 of this Indictment are re-alleged and incorporated as if fully set

15  forth here.

16       24.    Beginning on a date unknown, no later than on or about February 9, 2017, and continuing

17  to a date unknown, but through at least on or about March 25, 2019, in the Northern District of

18  California and elsewhere, the defendants,

19                          EDVIN OVASAPYAN,
                            HAKOB KOJOYAN,
20                          LORIK PAPYAN,
                         and STEPHEN SILVERMAN
21

22  did knowingly conspire to devise and intend to devise a scheme and artifice to defraud as to a material

23  matter, and to obtain money and property by means of materially false and fraudulent pretenses,

24  representations, and promises, and by concealment of material facts and omissions of material facts with

25  a duty to disclose, and, for the purpose of executing such scheme and artifice to defraud, to transmit and

26  cause the transmission of wire communications in interstate commerce, in violation of Title 18, United

27  States Code, Section 1343.

28       All in violation of Title 18, United States Code, Section 1349.

SUPERSEDING INDICTMENT                    5

COUNT TWO:        (18 U.S.C. § 1956(h) – Conspiracy to Commit Laundering of Monetary
                  Instruments)

25.     Paragraphs 1 through 24 of this Indictment are re-alleged and incorporated as if fully set forth here.

26.     Beginning at a date unknown to the grand jury, but no later than on or about February 9, 2017, and continuing as to all defendants to a date unknown to the grand jury, but to at least on or about March 25, 2019, in the Northern District of California and elsewhere, the defendants,

EDVIN OVASAPYAN,
HAKOB KOJOYAN,
LORIK PAPYAN,
and STEPHEN SILVERMAN

and others known and unknown, unlawfully and knowingly conspired together and with one another to violate Title 18, United States Code, Section 1956(a)(1).

27.     It was a part and an object of the conspiracy that the defendants, and others known and unknown to the grand jury, with the intent to promote the carrying on of specified unlawful activity and to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, to wit, conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 1349, unlawfully and knowingly, and knowing that property involved in a financial transaction represents the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct financial transactions which in fact involved the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1).

All in violation of Title 18, United States Code, Section 1956(h).

COUNT THREE:       (18 U.S.C. § 371 – Conspiracy to Engage in the Unlawful Wholesale
                   Distribution of Drugs)

28.     Paragraphs 1 through 27 of this Indictment are re-alleged and incorporated as if fully set forth here.

29.     Beginning at a date unknown to the grand jury, but no later than on or about February 9, 2017, and continuing to a date unknown to the grand jury, but to at least on or about March 25, 2019, in the Northern District of California and elsewhere, the defendants,

EDVIN OVASAPYAN,
HAKOB KOJOYAN,
LORIK PAPYAN,
and STEPHEN SILVERMAN

and others known and unknown, did knowingly and intentionally conspire to:

a)     knowingly engage in the unlicensed wholesale distribution of prescription drugs in interstate commerce, in violation of Title 21, United States Code, Sections 331(t), 353(e)(1)(A), 333(b)(1)(D);

b)     engage in the wholesale distribution of prescription drugs without obtaining and providing truthful and accurate transaction histories, transaction statements, and transaction information, with intent to defraud and mislead, in violation of Title 21, United States Code, Sections 331(t), 360eee-1(c), and 333(a)(2); and

c)     defraud the United States and its agencies by impeding, impairing, and defeating the lawful functions of the Food and Drug Administration to protect the health and safety of the public by ensuring that prescription drugs distributed in the United States were safe and effective from the time of manufacturing to the delivery to the entity that sells or dispenses the product to the ultimate consumer or patient.

Overt Acts

30.    In furtherance of the conspiracy, and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Northern District of California and elsewhere:

a)     On or about March 16, 2018, $42,000 was transferred from an account held in the name of Mainspring Distribution to an account domiciled in San Mateo, California.

b)     On or about April 5, 2018, $15,000 was transferred from an account held in the name of Mainspring Distribution to an account domiciled in San Mateo, California

c)     On or about September 26, 2017, the defendants caused Transaction Documentation to be generated for a customer that falsely and fraudulently misrepresented the source of prescription drug products.

d)     On or about March 25, 2019, a quantity of diverted prescription drugs was delivered to an address in North Hollywood, California, with the intent that they be

1     shipped to a prescription drug wholesale distributor in the State of Washington.

2     All in violation of Title 18, United States Code, Section 371.

3     <u>FORFEITURE ALLEGATION:</u>     (18 U.S.C. §§ 981, 982, 21 U.S.C. § 853 & 28 U.S.C. § 2461(c) –
    Criminal Forfeiture)

4

5     31.     All of the allegations contained in this Indictment are re-alleged and by this reference

6 fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18,

7 United States Code, Sections 981 and 982, Title 21, United States Code, Section § 853, and Title 28,

8 United States Code, Section 2461(c).

9     32.     Upon a conviction for any offense alleged in Count One of this Indictment, the

10 defendants,

11                        EDVIN OVASAPYAN,
                       HAKOB KOJOYAN,
                       LORIK PAPYAN,

12                 and STEPHEN SILVERMAN

13 shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all

14 property, real or personal, constituting or derived from proceeds the defendants obtained directly and

15 indirectly as the result of the violation, including but not limited to a forfeiture money judgment and the

16 assets listed in the attached Attachment A.

17     33.     Upon a conviction for any offense alleged in Count Two of this Indictment, the

18 defendants,

19                        EDVIN OVASAPYAN,
                       HAKOB KOJOYAN,
                       LORIK PAPYAN,

20                 and STEPHEN SILVERMAN

21 shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), 982(a), and 28 U.S.C.

22 § 2461(c), all property, real or personal, involved in or traceable to the violation, or constituting or

23 derived from proceeds traceable directly and indirectly to a violation, including but not limited to a

24 forfeiture money judgment and the assets listed in the attached Attachment A.

25     34.     Upon a conviction for any offense alleged in Count Three of this Indictment, the

26 defendants,

27                        EDVIN OVASAPYAN,
                       HAKOB KOJOYAN,
                       LORIK PAPYAN,

28                 and STEPHEN SILVERMAN

shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(7), and 28 U.S.C.

§ 2461(c), all property, real or personal, that constitutes or is derived, directly or indirectly, from the

gross proceeds traceable to the commission of the offense, including but not limited to a forfeiture

money judgment and the assets listed in the attached Attachment A.

35.     If any of the aforementioned property, as a result of any act or omission of the

defendants –

       a.     cannot be located upon the exercise of due diligence;

       b.     has been transferred or sold to, or deposited with, a third person;

       c.     has been placed beyond the jurisdiction of the Court;

       d.     has been substantially diminished in value; or

       e.     has been commingled with other property that cannot be divided without

             difficulty;

any and all interest the defendants have in other property shall be vested in the United States and

forfeited to the United States pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982 and

United States Code, Section 2461(c).

All in violation of Title 18, United States Code, Sections 981 and 982; Title 21, United States

Code, Section § 853; Title 28, United States Code, Section 2461(c); and Rule 32.2 of the Federal Rules

of Criminal Procedure.

DATED:   *5 Sept 2019*          A TRUE BILL

                                      FOREPERSON

DAVID L. ANDERSON
United States Attorney

ANDREW F. DAWSON
BRIGGS MATHESON
Assistant United States Attorneys

# Attachment A

- Real Property and Improvements located at 2481 N. Junipero Avenue, Palm Springs, California  92262 (APN 504-223-021-1)

- Real Property and Improvements located at 4305 Groves Place, Somis, California 93066 (APN 156-0-180-050)

- Real Property and Improvements located at 4314 Marina City Drive, Apt 416, Marina Del Rey, California 90292 (APN 8940-435-235)

- Real Property and Improvements located at 8654 Washington Boulevard, Culver City, California 90232 (APN 4312-024-001)

- Real Property and Improvements located at 383 Kalaimoku, Tower 2, Condo Unit 3106, Honolulu, Hawaii 96815 (APN 260180430207, Tax Map Key, 4-2-6-018-043)

- $1,304.12 in funds seized from Citibank account number ending 4298

- $44,427.96 in funds seized from Bank of America account number ending 9518

- $15,042.63 in funds seized from Bank of America account number ending 8795

- $40,689.99 in funds seized from Bank of America account number ending 3759